## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) Plaintiff, ) ) v. ) ) ) EL SOMBRERO OF VICKSBURG, INC.; ) LUIS ANGEL d/b/a EL SOMBRERO d/b/a ) EL SOMBRERO OF BYRAM, ) ) Defendants. ) | CIVIL ACTION NO. 3:19cv698HTW-LRA JURY TRIAL DEMANDED |

## COMPLAINT

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of sex (female), and to provide appropriate relief to Marisol Savinon-Jiminez ("Jiminez"), Amber Grammer ("Grammer"), and a class of at least four females who were adversely affected by such practices. As alleged with greater particularity in paragraphs twelve (12) through seventeen (17) below, Defendants El Sombrero of Vicksburg, Inc., ("El Sombrero Vicksburg") and Luis Angel d/b/a El Sombrero d/b/a El Sombrero of Byram ("El Sombrero Byram") (collectively referred to as "Defendants") subjected Jiminez, Grammer, and a class of females to harassment because of sex at El Sombrero Vicksburg's and El

Sombrero Byram's restaurants, and failed to take prompt, remedial action despite repeated employee complaints, and terminated them because they opposed such practices made unlawful under Title VII, or made a charge, testified, assisted, or participated in the Commission's investigation of Defendants' alleged unlawful employment practices.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e-5(f)(1)("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the Northern Division of the United States District Court for the Southern District of Mississippi.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. Section 2000e-5(f)(1) and (3).

4. At all relevant times, El Sombrero Vicksburg has continuously been a Mississippi corporation doing business in the State of Mississippi and has continuously had over 40 employees.

5. At all relevant times, El Sombrero Byram has continuously been doing business as a sole proprietorship in the State of Mississippi and has continuously had over 40 employees.

6. At all relevant times, Defendants have continuously been employers engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Jiminez and Grammer filed charges with the Commission alleging violations of Title VII by Defendants.

8. On August 5, 2019, the Commission issued to Defendants Letters of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendants to join the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. In its efforts to conciliate, the Commission engaged in communications with Defendants to provide them with the opportunity to remedy the discriminatory practices described in the Letters of Determination. The Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

10. On September 10, 2019, the Commission issued to Defendants Notices of Failure of Conciliation advising Defendants that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

11. All conditions precedent to the institution of the lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Beginning at least as early as September 10, 2016, Defendants have engaged in unlawful employment practices at their Vicksburg and Byram restaurant locations in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), and Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

13. Specifically, Defendants subjected Jiminez, Grammer, and a class of female employees who worked at their Vicksburg and Byram restaurant locations to severe, pervasive, unwanted, degrading and offensive sexual conduct, based on their sex (female). Jiminez worked as a busser at El Sombrero Byram from approximately May 17, 2017 to May 28, 2017 where at least one other female employee was also sexually harassed. Grammer worked as a hostess at El Sombrero Vicksburg from approximately April 17, 2016 to February 15, 2017 where at least three other female employees were also sexually harassed.

14. The unlawful sexual harassment, which was perpetrated by both supervisors and co-workers, included but was not limited to the following unwelcomed conduct that created a hostile work environment:

   a) Jiminez's supervisor at El Sombrero Byram, Juan Lemus ("Lemus"), pursued a sexual relationship with her, including touching her inappropriately, looking at her in a sexual manner, and repeatedly offering her money in exchange for sexual favors.

   b) When Jiminez refused Lemus's sexual advances, he made disparaging and belittling comments about her in front of others in the worksite and began micromanaging her work and withholding supplies she required to perform her duties.

   c) Jiminez complained about the harassment to her father who also worked at the Byram location as a Dishwasher. Jiminez's father complained to both Assistant Manager, David Perez, and the restaurant's owner, Luis Angel, about Lemus' harassment of Jiminez.

d) Lemus terminated Jiminez by telling her father that Jiminez was fired and that she and her father were a "piece of sh*t."

e) Grammer was sexually assaulted by a co-worker, Danny Guzman, in the parking lot of El Sombrero Vicksburg's location. When Grammer complained to her manager, Enrique Arambula ("Arambula"), that she did not feel comfortable working around the male perpetrator, El Sombrero Vicksburg initially suspended her and then terminated her. Arambula told Grammer that it would be easier if she would just do her job and ignore the incident and refused to change her schedule to prevent Grammer from working with Guzman.

f) Before the sexual assault, Guzman had touched Grammer inappropriately in the workplace.

g) Guzman also told another female employee he would agree to hand her something she requested "if you will let me grab your ass" and then he grabbed her buttocks without consent.

h) Guzman also sexually pursued another female employee by trying to get her to go home with him, buying her gifts and following her to her car and trying to kiss her. She ran away and was able to avoid his advances.

i) Male employees at Defendants' restaurants perpetuated a hostile work environment based on sex by slapping female employees on the buttocks, rubbing their genitals across female employees' buttocks, grabbing female employees around their waist, "wolf whistling" at female employees, and persistently offering money in exchange for sexual acts.

j) Male employees at Defendants' restaurants also frequently talked about female employees' buttocks, breasts, and about having sex.

k) Pablo Guzman Lopez ("Lopez") and Jose a/k/a Pee Wee LNU ("Jose"), male employees at El Sombrero Byram, slapped female employees' buttocks. Lopez also rubbed his erect genitals across a female employees' buttocks and then did a "little happy dance" in celebration.

l) Angel Garcia ("Garcia"), a kitchen worker at El Sombrero Vicksburg, told a female co-worker, "do you want to f*ck" and touched her buttocks while pretending he was brushing something off her pants. He also made unwanted sexual comments like, "sounds like you said screw me" when a female employee said, "excuse me."

m) An El Sombrero Vicksburg male server, Martine Sullivan ("Sullivan"), told a female employee, "You look like you could suck dick really good right now" and later repeated this statement and told her he knew someone who would pay her $300 to have sex with him. Sullivan also told a female employee he would pay her $20 for a blow job. In addition, Sullivan told a female employee a co-worker would pay her for "couchie" and joked that another male employee did not return to work because he had sex with her.

n) Another El Sombrero Vicksburg male employee, Luis LNU, told a female employee, "Why aren't you sucking my dick; it's just a little one."

o) Another El Sombrero Vicksburg male employee grabbed the breast of a female co-worker and called her derogatory names in Spanish like "big titties" and "loose booty."

p) Male employees at El Sombrero Vicksburg made comments to female employees such as "suck my dick" and "lick my balls."

q) Another El Sombrero Vicksburg Kitchen Worker, Jonas LNU ("Jonas"), offered to pay a female employee $100 for sex and told her that another male cook, Rico, LNU, "wanted her."

r) Jonas also lifted the shirt of a female employee multiple times despite her protests. When the female employee complained about Jonas to manager Arambula, he told her to "get over it; its not a big deal."

s) Another El Sombrero Vicksburg Kitchen Manager, Felipe LNU ("Felipe"), told a female employee to come cook vegetables so he could watch her ass shake while she did so. Felipe observed a female employee limping from a foot injury and told another male co-worker to "take it easy on her and rub her. . ." when the female employee interrupted Felipe and told him to stop what he was saying. Felipe responded, "Did you think I was going to say clitoris?" Felipe told another female employee, "You are a dirty girl; nobody has titties like that unless they are a dirty girl."

t) Another El Sombrero Vicksburg employee, Terico LNU, made unwanted sexual advances to a female employee, including unwanted touching, leaving her notes with his phone number and waiting after work for her at her car.

u) El Sombrero Vicksburg employee Darwin Soto ("Soto") pushed a female employee against a wall and tried to kiss her. When she resisted he grabbed her, bent her over, pulled her hair, and said, "I can do whatever I want."

v) Worksite sexual harassment of female employees was open and notorious and Defendants, including their supervisors and managers, were aware of it. Some members of management actively participated in the sexual harassment themselves.

w) Defendants' Operations Manager and part owner, Patrick Belden, told a female employee who had a seizure at home and hit her head, "You didn't have a seizure, you just had an orgasm for the first time and hit your head on the headboard."

x) One El Sombrero Byram female employee complained to Lemus that a male Dishwasher, Tony Smiley ("Smiley") threatened to kill her and told Lemus she would call the police. Lemus responded, "go ahead" and took no action against the male employee. Another manager, Silvera, was aware of this incident and took no action.

y) Jiminez's father complained about the rampant sexual harassment to El Sombrero Byram Assistant Manager, David Perez, Manager Roberto Silvera ("Silvera"), and owner, Luis Angel. Female employees complained to managers Arambula and Silvera, and were then terminated for "causing trouble." Other female employees were too intimidated to complain about harassment after seeing Defendants terminate females who reported harassment.

z) When one female employee complained to El Sombrero Byram Manager Silvera that a male kitchen worker, Garcia, was soliciting her for sex, Silvera responded that she should have sex with him to make a lot of money. Silvera also made sexually inappropriate comments to female employees about their appearance, engaged in sexual relationships with female subordinates, and pursued at least one underage female employee for a sexual relationship.

aa) Jiminez, Grammer, and other female employees repeatedly refused supervisors' and co-workers' sexual advances, but this did not deter the harassment.

bb) Defendants' supervisors and other non-supervisory employees did not subject male employees to the same unwelcome sexual advances and comments.

15. Defendants had no policy prohibiting discrimination under Title VII, including no policy prohibiting sexual harassment. Defendants had no complaint mechanism for employees to report sexual harassment and provided no training to employees on how to report harassment to a member of management, especially when the harasser was the employee's supervisor. Defendant provided no training to management on how to respond to complaints about sexual harassment, including conducting investigations of complaints.

16. In addition to failing to provide a workplace free from sexual harassment, Defendants also retaliated against Jiminez and Grammer and the class for complaining about sexual harassment while permitting the harassers to remain employed. Defendants also reduced the working hours and terminated class members who were interviewed by the EEOC investigator about the EEOC Charges of Discrimination underlying this litigation.

17. The harassment described in paragraph fourteen (14) was severe, ongoing, and pervasive at Defendants' locations, and known to Defendants' supervisors and management, yet Defendants failed to take prompt remedial action.

18. The effect of the practices complained of in paragraphs twelve (12) through seventeen (17) above has been to deprive Jiminez, Grammer, and the class of equal employment opportunities and otherwise adversely affected their status as employees because of their sex (female).

19. The unlawful employment practices complained of in paragraphs twelve (12) through seventeen (17) above were intentional.

20. The unlawful employment practices complained of in paragraphs twelve (12) through seventeen (17) above subjected Jiminez, Grammer, and the class to a hostile work environment based on their sex (female).

21. The unlawful employment practices complained of in paragraphs twelve (12) through seventeen (17) above were done with malice or with reckless indifference to the federally protected rights of Jiminez, Grammer and the class.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in sexual harassment, retaliation, and any other employment practices which discriminate on the basis of sex or protected activity.

B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and for persons who oppose conduct prohibited by Title VII, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole Jiminez, Grammer, and the class by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to front pay and reinstatement.

D. Order Defendants to make Jiminez, Grammer, and the class whole by providing appropriate compensation for the past and future pecuniary losses resulting from its unlawful employment practices , including but not limited to relocation expenses, job search expenses, medical expenses, and other pecuniary losses, in amounts to be determined at trial.

E. Order Defendants to make whole Jiminez, Grammer, and the class by providing, as appropriate, compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs twelve (12) through seventeen (17) above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F. Order Defendants to pay to Jiminez, Grammer, and the class punitive damages for its malicious and reckless conduct described in paragraphs twelve (12) through seventeen (17) above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.


RESPECTFULLY SUBMITTED,

Sharon Fast Gustafson
General Counsel

James L. Lee
Deputy General Counsel

11

Gwendolyn Young Reams
Associate General Counsel

U.S. Equal Employment Opportunity Commission
131 M. Street E
Washington, DC 20507

Marsha Rucker (PA Bar No. 90041)
Regional Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street, South
Birmingham, Alabama 35205
Telephone: (205) 212-2044
Facsimile: (205) 212-2041